## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT W. FARBER,

     Plaintiff,

     v.

H & K PERFORATING QPI, LLC, et al.,

     Defendants.

CIVIL ACTION NO. 3:21-CV-01723

(MEHALCHICK, M.J.)

### MEMORANDUM

Presently before the Court is a motion for partial summary judgment filed by Defendants H&K Perforating QPI, LLC, H&K Perforating, LLC, Bulls Acquisition Company, LLC, and Andrew Strang (collectively, "Defendants") on October 31, 2022. (Doc. 46). Plaintiff Robert W. Farber ("Farber") initiated this action by filing a complaint on October 7, 2021. (Doc. 1). Farber filed the second amended complaint on August 18, 2022. (Doc. 39). Defendants move for summary judgment on Farber's defamation claims in Count V and IX of the second amended complaint, arguing that there is no genuine issue of material fact and that they are entitled to judgment on those claims as a matter of law.[1] (Doc. 47, at 12). For the reasons stated herein, the motion for partial summary judgment will be granted. (Doc. 46).

I.    **SUMMARY OF MATERIAL FACTS**

This factual background is taken from Defendants' statement of material facts and accompanying exhibits. (Doc. 47; Doc. 47-1). Pursuant to Local Rule 56.1, Farber has

---

[1] In his brief in opposition to Defendants' motion for summary judgment, Farber states that he "will voluntarily withdraw Count IX." (Doc. 48, at 2). Therefore, Count IX of the complaint is DISMISSED without prejudice.

provided his response to Defendants' statement of facts and has provided accompanying exhibits. (Doc. 49). Where Farber disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Farber as the non-moving party, with all reasonable inferences drawn in his favor.

A. PROCEDURAL HISTORY

On October 7, 2021, Farber initiated this action by filing a complaint against Defendants alleging claims for breach of contract, wrongful discharge, breach of compensation and severance agreement, violations of the Pennsylvania Wage Payment and Collection Law, promissory estoppel, defamation of character, and violations of other applicable laws. (Doc. 1). Before Defendants filed a responsive pleading, Farber filed an amended complaint on October 18, 2021, including additional claims regarding the alleged conversion of his personal property. (Doc. 3). The Court scheduled an evidentiary hearing for March 3, 2022, to resolve the dispute regarding the personal property, which forms the basis of the claims in Counts VI-VIII of the amended complaint. (Doc. 23). However, on February 28, 2022, the parties notified the Court that they substantially resolved the personal property dispute and requested to cancel the hearing. (Doc. 29). Thereafter, on October 25, 2022, Farber retrieved from H&K's facility the remaining items he maintains are his personal property. (Doc. 47, at 12). On August 18, 2022, Farber filed the second amended complaint, adding Defendant Andrew Strang, in his individual capacity and including an additional defamation claim (Count IX). (Doc. 43).

On October 31, 2022, Defendants filed the motion for partial summary judgment. (Doc. 46). On November 1, 2022, Defendants filed a brief in support of the motion, which includes a statement of material facts. (Doc. 47). On November 17, 2022, Farber filed a brief in opposition and answer to Defendants' statement of material facts pursuant to Local Rule 56.1. (Doc. 48; Doc. 49). Defendants filed a reply brief on December 16, 2022. (Doc. 52). The motion for summary judgment has been fully briefed and is now ripe for disposition. (Doc. 47; Doc. 48; Doc. 49; Doc. 52).

B. FACTUAL BACKGROUND

Bryce Fisher is the Manager of Defendant Bulls Acquisition.[2] (Doc. 47, ¶ 1; Doc. 47-1, at 9-10). Defendant Andrew Strang is the President and Chief Operating Officer of H&K Perforating LLC. (Doc. 47, ¶ 2; Doc. 47-1, Strang Dep. Tr. 10:12-13, Aug. 11, 2022). Bulls Acquisition is the only member of H&K Perforating LLC. (Doc. 47, ¶ 3; Doc. 47-1, Fisher Dep. Tr. 14:14-17, Aug. 9, 2022). In January 2021, Defendant Bulls Acquisition Company acquired the assets of QPI, including its facility located in Carbondale, Pennsylvania. (Doc. 47, ¶ 4; Doc. 47-1, at 72-162). The terms of the acquisition are detained in the parties' Asset Purchase Agreement ("APA"). (Doc. 47, ¶ 4; Doc. 47-1, at 72-162). Plaintiff Farber served as the President and at all relevant times was the sole shareholder of QPI. (Doc. 47, ¶ 5; Doc. 47-1, Farber Dep. Tr. 10:9-13, Feb. 15, 2022). QPI filed for bankruptcy on December 16, 2020. (Doc. 47, ¶ 6; Doc. 47-1, Farber Dep. Tr. 14:19-15:5, Feb. 15, 2022). QPI provided

---

[2] Farber denies this assertion. Farber asserts that "Defendants make no specific reference to Bryce Fisher being 'Manager' of Bulls Acquisition Company is contained in the unsigned verification form attached to exhibit A. In Bryce Fisher's deposition, a copy of which is attached to defendant's brief as exhibit C, Fisher testifies he has never been an employee of Bulls Acquisition Company, LLC, but says he is a 'member' of the LLC, along with at least nine others. Fisher makes no mention of being the LLC Manager." (Doc. 49, ¶ 1; Doc. 47-1, Fisher Dep. Tr. 10:10-12:24, Aug. 9, 2022).

health insurance for its employee. (Doc. 47, ¶ 7; Doc. 47-1, Farber Dep. Tr. 19:23-20:12, 26:4-9, Feb. 15, 2022). QPI required those employees who elected to participate in QPI's healthcare plan to contribute to the cost of their coverage. (Doc. 47, ¶ 7; Doc. 47-1, Farber Dep. Tr. 19:23-20:12, 26:4-9, Feb. 15, 2022). QPI thus deducted a percentage of those employees' wages from their weekly paychecks. (Doc. 47, ¶ 7; Doc. 47-1, Farber Dep. Tr. 19:23-20:12, 26:4-9, Feb. 15, 2022). QPI was not permitted to use employees' healthcare payroll deductions for any purpose other than paying the employee portion of the health insurance cost. (Doc. 47, ¶ 8; Doc. 47-1, Farber Dep. Tr. 20:13-16, Feb. 15, 2022).

Upon the closing of the asset purchase, on January 21, 2021, H&K hired the QPI employees, including Farber. (Doc. 47, ¶ 9; Doc. 47-1, Farber Dep. Tr. 80:1-14, Feb. 15, 2022; Doc. 47-1, at 207-09).

QPI's health insurance was terminated effective December 1, 2020, fourteen (14) days prior to QPI's voluntary bankruptcy petition.[3] (Doc. 47, ¶ 10; Doc. 47-1, at 9-12; Doc. 39, ¶ 29). On June 3, 2021, H&K management met with former QPI employees who reported having outstanding medical bills for treatment and services they had procured in December

---

[3] Farber denies this assertion. Farber asserts that Strang and Nicholas made untrue statements to other employees that Farber caused them to be "uninsured in mid-December 2020," and that QPI "never received any notice" canceling health insurance coverage. (Doc. 49, ¶ 10; Doc. 34, ¶ 29; Doc. 47-1, Farber Dep. Tr. 30:19, Feb. 15, 2022). In addition, Farber avers that Fisher "testified that the only notice of cancellation of coverage he was aware of was a notice of cancellation of stop loss coverage that was provided to him by [Farber] in November or December of 2020. Fisher further testified that up until the date of his deposition August 9, 2022, he had never seen a notice of cancelation." (Doc. 49, ¶ 10; Doc. 47-1, Fisher Dep. Tr. 98:10, 101:8, Aug. 9, 2022). Lastly, Farber maintains that he "testified that the employee deductions for the first two weeks of December 2020, were left in the seller's bank account at closing and transferred to H&K Perforating, and further that Bryce Fisher refused to make the December insurance payment." (Doc. 49, ¶ 10; Doc. 47-1, Farber Dep. Tr. 26:19-27:9, Feb. 15, 2022).

2020 and January 2021, due to the lapse of their QPI health insurance coverage in December 2020. (Doc. 47, ¶ 11; Doc. 39, ¶ 29; Doc. 47-1, at 208; Doc. 47-1, Strang Dep. Tr. 35:7-24, Aug. 11, 2022). During the meeting, one of the employees questioned what had happened to the money deducted from the employees' paychecks to contribute to the cost of their healthcare coverage. (Doc. 47, ¶ 11; Doc. 47-1, Strang Dep. Tr. 39:4-40:3, Aug. 11, 2022). On June 9, 2021, H&K placed Farber on paid leave, pending an investigation into concerns raised by the former QPI employees at the June 3, 2021 meeting.[4] (Doc. 47, ¶ 12; Doc. 47-1, at 211). When questioned, Farber told Fisher and Strang that any funds withheld from employees' wages for contributions to their healthcare coverage had been sent to the health plan manager.[5] (Doc. 47, ¶ 13; Doc. 47-1, Farber Dep. Tr. 22:14-24, 84:11-17, Feb. 15, 2022). QPI did not separately identify employee contributions from other business accounts to protect these employee funds. (Doc. 47, ¶ 13 n.1; Doc. 47-1, Farber Dep. Tr. 21:2-13, Feb. 15, 2022).

---

[4] Farber denies this assertion, stating that the letter from H&K "states that the investigation was 'into allegations by certain beneficiaries . . . that premium withholdings were not appropriately remitted.'" (Doc. 49, ¶ 12; Doc. 47-1, at 211). Farber argues that "[c]ontrary to that self-serving statement, Steven Strang testified that 'No one brought to our attention that there were withholdings that were not appropriately remitted.'" (Doc. 49, ¶ 12; Doc. 47-1, Strang Dep. Tr. 39:7, Aug. 11, 2022). Furthermore, Farber argues that "Strang testified that one employee, John Tyler, asked 'what happened to the money that was taken out of our paychecks.'" (Doc. 49, ¶ 12; Doc. 47-1, Strang Dep. Tr. 40:1, Aug. 11, 2022).

[5] Farber denied this assertion as stated, asserting that the statement contained in this paragraph is incomplete and misleading. For clarity and completeness, Farber states that he "further testified that the employee deductions for the first two weeks of December 2020, were left in the seller's bank account at closing and transferred to H & K Perforating, and further that Bryce Fisher refused to make the December insurance payment." (Doc. 49, ¶ 13; Doc. 47-1, Farber Dep. Tr. 26:19-27:9, Feb. 15, 2022).

On October 1, 2021, H&K terminated Farber's employment for cause.[6] (Doc. 47, ¶ 14; Doc. 47-1, at 213-14).

On November 16, 2021, H&K permitted Farber to come to the Carbondale facility to retrieve personal property that remained there. (Doc. 47, ¶ 15; Doc. 47-1, Farber Dep. Tr. 124:1-133:24, Feb. 15, 2022). Farber retrieved a number of personal items from his former office and throughout the facility. (Doc. 47, ¶ 15; Doc. 47-1, Farber Dep. Tr. 124:1-133:24, Feb. 15, 2022). During the November 2021 visit, H&K requested that Farber leave the premises before gathering all of his items because he attempted to remove certain documents and equipment that had been agreed between the parties to remain in place until further discussion.[7] (Doc. 47, ¶ 16; Doc. 47-1, Strang Dep. Tr. 26:24-27:2, 28:18-21, 74:15-25, Aug. 11, 2022; Doc. 47-1, Barger Dep Tr. 37:24- 38:10, 42:20-24, Aug. 29, 2022). Farber ignored H&K's requests to leave those documents and equipment, and proceeded to remove them, including a computer and hard drive he had used throughout his tenure as an H&K employee. (Doc. 47, ¶ 17; Doc. 47-1, Strang Dep. Tr. 32:2-4, Aug. 11, 2022; Doc. 47-1, Farber Dep. Tr. 113:2-18, Feb. 15, 2022; Doc. 47-1, Barger Dep Tr. 40:18-43:4, Aug. 29, 2022). On November 17, 2021, Defendants contacted the Carbondale Police regarding Farber's removal of the

---

[6] Farber admits this assertion in part, stating that his employment was terminated on October 1, 2021. However, Farber denies this assertion in part, arguing that "[w]hether the termination was for cause is a central issue in the litigation. The self-serving termination letter is not proof of cause." (Doc. 49, ¶ 14).

[7] Farber admits the assertions in part, stating that on November 16, 2021, H&K requested him to leave the premises before gathering all his property. However, Farber denies that he attempted to remove items identified as disputed, arguing that Barger, the H&K employee assigned to oversee Farber's November 16, 2021, visit, testified that he did not have a list of disputed items, he helped Farber carry boxes to his vehicle, and he never told Farber that there were blank Post-it Notes on certain items indicating those items were in dispute. (Doc. 47, ¶¶ 16-17; Doc. 47-1, Barger Dep Tr. 38:13, 40:6, 44:11-14, Aug. 29, 2022).

computer equipment, customer files, documents, login information, and flash drives. (Doc. 47, ¶ 18; Doc. 47-1, at 235-36). The police dispatched an officer, who came to the Carbondale site and spoke with Strang and Joey Barger. (Doc. 47, ¶ 18; Doc. 47-1, Strang Dep. Tr. 29:15-30:22, Aug. 11, 2022). The responding officer prepared a report of the information provided to him by Strang and Barger. (Doc. 47, ¶ 18; Doc. 47-1, at 235-36).

II.   **LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility

determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'" *Velentzas v. U.S.*, No. 4: 07-CV-1255, 2010 WL 3896192, at *7 (M.D. Pa. Aug. 31, 2010) (quoting *Goode v. Nash*, 241 F. App'x 868, 869 (3d Cir. 2007)) (citation omitted); *see also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Velentzas*, 2010 WL 3896192, at *7 (quoting *Goode*, 241 F. App'x at 869). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir. 2007).

III. **DISCUSSION**

Count V of the second amended complaint sets forth a claim for defamation of character against Defendants. (Doc. 39, at 12-13). Farber alleges that on June 3, 2021, Strang and H&K's HR Manager, acting individually and/or as an agent of H&K, and Colleen

Nichols, acting on behalf of Defendants, told a group of H&K employees, including: Marisa Kilmer, Frank Shema, William White, Michael Zebrowski, and Steve Kostiak, that Farber was responsible for taking their health insurance premium contributions, not remitting them back to the health insurance carrier, and causing the employees to be uninsured in mid-December of 2020, through January 22, 2021. (Doc. 39, ¶ 74). Faber avers that the above-mentioned communications constitute slander *per se* because they "suggest Farber committed a criminal offense in essentially converting employee insurance premiums to his own use," and "were incompatible with [Faber]'s business." (Doc. 39, ¶¶ 75-76).

"Defamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." *Mzamane v. Winfrey,* 693 F. Supp. 2d 442, 476 (E.D. Pa. 2010) (quoting *Joseph v. Scranton Times L.P.,* 959 A.2d 322, 334 (Pa. Super. 2008)). A plaintiff invoking Pennsylvania law in an action for defamation has the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 Pa. C.S.A. § 8343(a); *see also Mzamane,* 693 F. Supp. 2d at 476-77.

Whether the challenged communication is capable of bearing the defamatory meaning ascribed to it by the plaintiff is a question for the court. *Smith v. IMG Worldwide, Inc.,* 437 F. Supp. 2d 297, 307 (E.D. Pa. 2006); *Tucker v. Philadelphia Daily News,* 848 A.2d 113, 123-24 (2004). A statement is considered libel or defamation *per se* when the "speaker imputes to another conduct, characteristics, or a condition that would adversely affect [him in his] lawful

business or trade . . . ." *Walker v. Grand Cent. Sanitation, Inc.,* 634 A.2d 237, 241 (Pa. Super. 1993). A statement is defamation *per se* as an accusation of business misconduct if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of lawful business." *Smith,* 437 F. Supp. 2d at 308 (quoting *Clemente v. Espinosa,* 749 F. Supp. 672, 677-78 (E.D. Pa. 1990)). The statement must be "peculiarly harmful to one engaged in [that] business or profession. Disparagement of a general character, equally discreditable to all persons, is not enough . . . ." *Clemente,* 749 F. Supp. at 678. The statements that Farber alleges constitute defamation fall into this category.[8]

To determine whether a communication is capable of a defamatory meaning, the court must consider whether it "tends to harm an individual's reputation so as to lower him in the estimation of the community or [to] deter third persons from associating or dealing with him." *U.S. Healthcare v. Blue Cross of Greater Phila.,* 898 F.2d 914, 923 (3d Cir. 1990) (citing *Birl v. Philadelphia Elec. Co.,* 167 A.2d 472, 476 (1960)). In reaching its conclusion, the court must view the statements in context and determine whether the communication seems "to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." *Baker v. Lafayette Coll.,* 532 A.2d 399, 402 (1987) (internal citations omitted); *Green v. Mizner,* 692 A.2d 169, 172 (Pa. Super. Ct. 1997). In this regard, the

---

[8] A plaintiff in a defamation *per se* action need not make a showing of special damages, *i.e.,* out-of-pocket expenses borne by the plaintiff due to the defamation, he or she must demonstrate general damages caused by the statement *i.e.,* proof that one's reputation was actually affected by defamation or that one suffered personal humiliation, or both. *Synygy, Inc. v. ScottLevin, Inc.,* 51 F. Supp. 2d 570, 581 (E.D. Pa. 1999); *Brinich v. Jencka,* 757 A.2d 388, 397 (Pa. Super. 2000); *see also Pennoyer v. Marriott Hotel Services, Inc.,* 324 F. Supp. 2d 614, 619 (E.D. Pa. 2004) ("The Restatement (Second) of Torts requires a victim of slander per se to make some showing of general damages . . . .")

court should "determine the effect the [communication] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Baker,* 532 A.2d at 402; *Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 442 A.2d 213, 216 (1981). It, therefore, follows that, in doing so, the court must consider the nature of the audience receiving the remarks. *Baker,* 532 A.2d at 402.

Moving for summary judgment, Defendants argue that Farber's defamation claim in Counts V fails as a matter of law because corporate communications related to the investigations of employees' concerns are subject to conditional privilege. (Doc. 47, at 14-17). In opposition, Farber argues that even if Defendants can prove the privilege attaches, "the privilege was abused when it was communicated to the employees that Farber was at fault for their health claims being denied" because "[t]elling employees Farber was at fault did not aid any investigation, in fact the conclusory nature of the information could only hamper a fair investigation." (Doc. 48, at 7).

Under Pennsylvania law, conditional privilege is an affirmative defense to defamation. 42 Pa. Cons. Stat. Ann. § 8343(b)(2). "Communications are privileged when they are 'made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause . . . .' " *Emekekwue v. Offor,* 26 F.Supp.3d 348, 364 (M.D. Pa. 2014) (quoting *Choi v. Sohn*, Civ. No. 01-1782, 2004 WL 627060, at *3 (E.D. Pa. Mar. 1, 2004) ). "Stated differently, a conditional privilege arises 'whenever circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.'" *Emekekwue*, 26 F.Supp.3d at 364 (quoting *Tucker v. Merck & Co., Inc.*, 102 F. App'x 247, 253-54 (3d Cir. 2004)). Under Pennsylvania law, a conditional privilege applies "when the speaker

and recipient share a common interest in the subject matter and both are entitled to know the information," including "when an employer's workers communicate with each other in connection with the discipline, including termination, of a fellow employee." *Carroll v. Guardant Health, Inc.*, 511 F.Supp.3d 623, 667 (E.D. Pa. 2021) (quoting *Foster v. UPMC South Side Hosp.*, 2 A.3d 655, 664 (Pa. Super. Ct. 2010) (collecting cases)).

Here, Defendants argue the statements Strang made in the workplace setting to interested employees regarding the cancelation of their prior health coverage and their unpaid claims are conditionally privileged. (Doc. 47, at 16-17). According to Strang's deposition testimony, at the meeting of H&K employees, one of the employees raised the issue of their employee contributions to health coverage when employed by QPI. (Doc. 47-1, Strang Dep. Tr. 39:18-40:19, Aug. 11, 2022). Based on Strang's and Nichols' testimony, the only employees included in this meeting were those with unpaid medical claims, and thus those employees had a common, particular interest in the cancellation of healthcare coverage and what had happened to the contributions they had made to the cost of that coverage. (Doc. 47-1, Strang Dep. Tr. 35:20-24, Aug. 11, 2022; Doc. 47-1, Nichols Dep. Tr. 32:9-25, 2022). Defendants have adequately raised and established the affirmative defense of conditional privilege regarding these communications.

"Once the conditional privilege has been raised and established, the burden of proving abuse of that conditional privilege then shifts to the plaintiff." *Simms v. Exeter Architectural Products, Inc.*, 916 F. Supp. 432, 436 (M.D. Pa. 1996) (citing *Banas v. Matthews Intern Corp.*, 502 A.2d 637, 638 (1985)).

> Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to [a] person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or includes defamatory

matter not reasonably believed to be necessary for the accomplishment of the purpose.

> *Simms*, 916 F. Supp. at 436 (quoting *Beckman v. Dunn*, 419 A.2d 583, 588 (1980) (internal citations and footnote omitted)).

The existence of a conditional privilege is a question of law, but it is a question of fact as to the possible abuse of the privilege. *Simms*, 916 F. Supp. at 436 (citing *Johnson v. Res. for Human Dev., Inc.*, 860 F. Supp. 218, 223 (E.D. Pa. 1994); *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 463 (Pa. 1984)).

Farber argues Defendants abused the privilege when Strang "communicated to the employees that Farber was at fault for their health claims being denied." (Doc. 48, at 7). In support of his assertion, Farber points to the following: (1) Strang conceded "he was not aware of any employees placing blame on [Farber]"; (ii) "[t]elling employees Farber was at fault did not aid any investigation, in fact the conclusory nature of the information could only hamper a fair investigation"; and (iii) "[w]hat communicating to employees did do was insulate the defendants from fault and harm Farber." (Doc. 48, at 7). Reading Strang's deposition testimony in context, he testified that he was not aware of employees placing blame on Farber, but he did not testify whether employees actually placed blame on Farber. (Doc. 47-1, Strang Dep. Tr. 40:16-19, Aug. 11, 2022). Farber fails to identify how Strang's statements could hamper H&K's investigation or explain how the alleged statement insulated Defendants from fault and harmed Farber. Even accepting Strang made the statement as alleged, Farber offers no evidence to support his contention that Strang abused the condition privilege "by exaggerated additions, or embellishments," or that he made the alleged statement "solely for the purpose of causing harm to the plaintiff." *Sciandra v. Lynett*, 187 A.2d 586, 589, 592 (Pa.

1963). The Court sees no evidence creating a fact issue on an abuse of the condition privilege as to Strang.

In addition, Farber submits that Strang's statements are not privileged as he was motivated by malice. (Doc. 48, at 7-8). Farber contends "Strang had serious disdain for Farber." (Doc. 48, at 8). It appears that Farber is referring to statements made by Strang in a series of emails on April 27, 2021, where Strang refers to Farber as a "selfish child" and "not a leader." (Doc. 48-6, at 1). Nothing in the emails demonstrates that Strang's statement, made in a meeting with employees voicing concerns about the lapse of their former healthcare coverage and the amount QPI had deducted from their paychecks for that coverage, was motivated by malice. *See Sheehan v. Anderson*, No. 98-5516, 2000 WL 288116, at *3 n.9 (E.D. Pa. Mar. 17, 2000), *aff'd,* 263 F.3d 159 (3d Cir. 2001) ("[A]lthough it is apparent that [defendant] and [plaintiff] did not get along, ill will alone is not 'malice' in a defamation context.") (citing *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 666 (1989) (stating "the actual malice standard is not satisfied merely through a showing of ill will")). Farber's conclusory allegations are insufficient to rise to the factual bias malice requires.

Based on the record, the Court finds that there is not sufficient evidence for a reasonable jury to conclude that Strang acted with malice. Farber has failed to produce "sufficient evidence to permit the conclusion that the defendant in fact had serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968); *see also Sheehan*, 2000 WL 288116, at *4 (dismissing complaint for failure to demonstrate facts which would support finding of malice). Therefore, the Court finds that conditional privilege applies to the statements made by Strange are protected by conditional privilege, and that Farber has not provided any evidence to support his assertion that Defendants abused the privilege.

Accordingly, the Court will grant summary judgment in favor of Defendants on Count V of Farber's complaint.[9]

IV.   **CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion for partial summary judgment is **GRANTED** and Count V of Farber's second amended complaint is **DISMISSED WITH PREJUDICE**. (Doc. 46). It addition, Count XI of the second amended complaint claim is **DISMISSED WITHOUT PREJUDICE**.

An appropriate Order follows.

BY THE COURT:

Dated: May 10, 2023                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**

---

[9] Based on the finding that Defendants are entitled to summary judgment on Tobin's Count V claims, it is not necessary for the Court to consider Defendants' remaining arguments in support of summary judgment.